MAHAN et al. v. MOORE et al.

No. 32462.    Dec. 17, 1946.

*175 P. 2d 345.*

Sparks, Boatman & Farrier, of Woodward, for plaintiffs in error.

A. W. Billings, of Woodward, for defendants in error.

BAYLESS, J. This appeal from the district court of Woodward county by Edna Mahan, formerly Donaldson, and Lloyd W. Donaldson, who were married at one time and are the parents of the minor child whose custody is involved and who were later divorced, presents their complaint regarding the refusal of that court to modify its former order bestowing the custody of the child upon Pernia and Austin Moore.

Edna Donaldson was granted a divorce from Lloyd on the grounds of "extreme cruelty and of gross neglect of duty", and this provision was made

for the custody of their 15-months old child:

" . . . and that the parties hereto have agreed that the custody of said minor child shall be confided to Pernia Moore, sister of the plaintiff, and that the defendant has agreed to pay to said Pernia Moore, for the care and keep and education of said child the sum of Ten ($10.00) Dollars per month, said payments to commence on the 1st day of July, 1938, and to continue to be made on the 1st day of each month thereafter, as long as said child remains in the care and custody of said Pernia Moore or until said minor child attains the age of eighteen (18) years.

"It is further ordered, adjudged and decreed by the court that the care, custody and education of the child of the parties hereto, Edna Harriett Donaldson, be confided to Pernia Moore, and the plaintiff and defendant are hereby enjoined from interfering with said Pernia Moore in her custody of said minor child, until such time as the parties hereto agree that the care and custody of said minor child be confided to some other person, or until the further order of this court.".

Thereafter, Moores instituted adoption proceedings in the county court of Woodward county, the child's mother giving her consent, and December 2, 1939, the adoption of the child by the Moores was ordered. At that time it was deemed by the parties that the provisions of 10 O.S. 1941 § 44 dispensed with the consent of the father of the child to the proposed adoption, and his consent was not sought nor was it given. September 24, 1945, the. plaintiffs in error filed their motion to modify the provisions of the divorce decree relating to the custody of the child, alleging that they had come to an agreement on this as contemplated in the decree above, and attaching a stipulation wherein they had agreed the mother should have the exclusive, permanent custody of the child. The lower court denied this application by sustaining the motion to dismiss filed by Moores. That court found that no other legal attack upon the adoption proceedings had been made, that those proceedings were valid

and this proceeding amounted to a collateral attack on the adoption proceedings.

While several divisions are made in the argument presented by the briefs, the parties all assert that the controlling factor is validity of the adoption proceedings in the absence of the consent of its father. The section of our statutes above cited as controlling reads:

"A legitimate child cannot be adopted without the consent of its parents, if living, nor an illegitimate child without the consent of its mother, if living, *except that consent is not necessary from a father or mother deprived of civil rights or adjudged guilty of adultery, or of cruelty,* and for either cause divorced or adjudged to be an habitual drunkard, or who has been judiciously deprived of the custody of the child, on account of cruelty or neglect." (Emphasis ours.)

The parents cite 91 A.L.R. 1387, and the various decisions included in that annotation, in an effort to show that in several states where there are statutory provisions similar to ours the courts have, nevertheless, not applied such statutes with the strictness adopted by the trial court in this case. In addition to this, they assert that the language of the petition for divorce and the decree of divorce refer to extreme cruelty but only so in general terms, and deny that the pleadings or proof justified a divorce on such grounds. It seems to be their purpose by this phase of their brief to deny the tenor and effect of the quoted portion of the divorce decree. We can dispose of this aspect of the case by saying that no such attack was made upon the decree of divorce in the lower court and as a result there is no record before us which we could consider as the basis for judging the argument made.

The adoptive parents for their part cite 1 Am. Jur. 674 and the authorities in the footnotes in an effort to show that the courts generally have recognized the legislative power with respect to divorces and adoptions. They further call attention to the rule of liberality

in favor of adoptions that shall apply in attacks made on them, and urge that the mother having given her consent and the father (in addition to not being a person whose consent was needed) having acquiesced in the adoption for more than five years are neither now in a position to attack the adoption proceedings. Throughout they have urged that this is a collateral attack upon the adoption proceedings and cannot be maintained.

In divorce actions we have held that the district courts have a continuing jurisdiction over the matter of the custody of the child or children of the divorced couples. Sango v. Sango, 121 Okla. 283, 249 P. 925; Newberry v. Newberry, 147 Okla. 249, 296 P. 202; and Hughes v. Bowen, 193 Okla. 269, 143 P. 2d 139. This is said to arise out of the public interest in the welfare of the children, and while every consideration is given the claims of one or other of the parents, under their natural rights, to have custody of the children, it is the interests of the child that control the final decision.

That the Legislature should have taken a hand in this in its provision for adoptions is only natural, and our entire chapter on adoptions, 10 O.S. § 1941, manifests the Legislature's care for the welfare of children subject to adoption, including the children of divorced parents.

It is, therefore, no interference with the continuing power of the district court over this child to undertake to adopt it, as allowed by law. If, in providing for the adoption of a child of divorced parents, the Legislature authorizes the adoption of a child without first obtaining the consent of its parent who has been divorced because of the exercise of extreme cruelty toward the other parent, it must be because the Legislature deemed it not to the welfare of a child to be further regarded as the child of a parent guilty of such conduct. By 10 O. S. 1941 § 54, the natural rights of parents are ended by adoption.

We think section 44, above, has application, and that the adoption proceedings under attack were not invalid because the consent of the father was not first obtained, he having been divorced for extreme cruelty.

The judgment appealed from is affirmed.

HURST, V.C.J., and RILEY, OSBORN, DAVISON, and ARNOLD, JJ., concur.